UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00661-RSE

SUZANNE W.                                                                PLAINTIFF

VS.

FRANK BISIGNANO,
*Commissioner of Social Security*[1]                                    DEFENDANT

MEMORANDUM OPINION
AND ORDER

The Commissioner of Social Security denied Claimant Suzanne W.'s ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Plaintiff filed a Fact and Law Summary and Brief. (DN 12; DN 13). The Commissioner filed a responsive Fact and Law Summary. (DN 15). Claimant did not file a reply. The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

I. Background

Suzanne W. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act on June 9, 2021. (Transcript, hereinafter ("Tr."), 214-15). Claimant's application alleged her disability began on July 2, 2015 due to bipolar disorder, ADHD, degenerative disc disease, and shoulder bursitis. (*Id.*; Tr. 55, 234, 238). Her date last insured was

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

June 30, 2019. (Tr. 234). The Commissioner denied Claimant's applications at the initial and reconsideration levels. (Tr. 110-13, 115-18).

### A. Claimant's March 24, 2022 Administrative Hearing and Decision

At Claimant's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky on March 24, 2022. (Tr. 50). Claimant and her counsel appeared by telephone.[2] (Tr. 52-53). An impartial vocational expert also participated in the hearing. (*Id.*).

Claimant provided the following testimony. At the time of the hearing, Claimant was fifty-six years old and living in a mobile home in Radcliff, Kentucky. (Tr. 56-57). She graduated from high school and earned two years of college credits. (*Id.*). During the relevant period of disability, 2015-2019, Claimant had her driver's license and lived with her daughter for part of the time. (Tr. 57-58). She previously worked for an afterschool program at a middle school and as a substitute teacher. (Tr. 59-60, 64-65). She also reentered the Army Reserves in September 2007, performing various roles as a soldier, truck driver, etc. until 2015. (Tr. 60-63).

Claimant began receiving treatment for bipolar disorder around 2009. (Tr. 67). She attributes several write-ups she received at work for untimeliness and her inability to stay focused to bipolar disorder. (Tr. 67-68). She also struggled to get along with certain coworkers and supervisors in the workplace. (Tr. 68). Through the VA, she saw a psychiatrist and was on medication for her bipolar disorder. (Tr. 69). Side effects from the medication, however, left her feeling sedated, tired, and lethargic. (Tr. 70).

In 2011, Claimant had surgery for a tear in her right rotator cuff. (*Id.*). Following the surgery, she used a heating pad, ice, and pain medication when the pain became unbearable. (Tr.

---

[2] Claimant consented to a telephonic hearing due to the COVID-19 protocols. (Tr. 172).

2

71). She alleges trouble reaching, lifting, grabbing, and holding items. (Tr. 71-72). Claimant also alleges difficulty standing and walking due to bursitis in her hips. (Tr. 75). She claims that during the relevant period she could not stand for more than five minutes and that around 2013 the VA gave her a cane. (Tr. 75-76). She also uses handrails in the shower, an elevated toilet seat, a long shoehorn, and a grabber to pick up items. (Tr. 76-77). Sitting was difficult during this time, according to Plaintiff, requiring her to lean side to side. (Tr. 77). She would constantly shift positions trying to get comfortable. (*Id.*).

An injury to her neck while she was in the military gives her "excruciating migraines and also neck pain," and led to three herniated discs. (Tr. 72). Her migraines during the relevant period were "almost daily." (*Id.*). Medication sometimes curbed the pain, but other times the medication had no effect. (Tr. 73). On five or six occasions before 2015, she had to go to the emergency room for her migraines, where she was placed on a morphine drip. (Tr. 73-75). She explains she was no longer able to visit the emergency room after being discharged from the military. (*Id.*).

She did light chores during the relevant period when she could. She did not vacuum or wash dishes but could fix herself a sandwich or get herself a drink. (Tr. 78). Claimant relied on her daughter to clean the house and cook. (*Id.*).

ALJ McDaniel issued an unfavorable decision on April 11, 2022. (Tr. 11-26). She concluded Claimant was not under a disability, as defined in the Social Security Act, from July 2, 2015, her alleged onset date, through June 30, 2019, her date last insured. (Tr. 26). Claimant appealed ALJ McDaniel's decision. (Tr. 202-03). The Appeals Council declined review. (Tr. 594-97). Claimant then appealed to this Court. After Claimant filed her brief, the Parties filed a Joint Motion for Remand of Proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g), which the Court granted. (Tr. 611-17).

### B. Claimant's June 4, 2024 Administrative Hearing and Decision

Claimant appeared telephonically for a second hearing before ALJ McDaniel on June 4, 2024 in Louisville, Kentucky. (Tr. 538-70). Claimant largely provided similar testimony to that from her first hearing with some additional information. She testified that medication she was taking from 2015-2019 prescribed by the VA caused her to undergo emergency bowel surgery in April of 2022 and, as a result, she now uses a colostomy bag. (Tr. 548-49).

As to her mental health, Claimant recounted daily mood swings during the relevant disability period, as well as manic episodes. (Tr. 550-552). When she wasn't manic, she reports having been depressed, spending hours laying down, sleeping, "just wanting to die." (Tr. 553). Claimant says she was diagnosed with ADHD in 2015 during her exit interview with the Army. (Tr. 554). The medication she took for ADHD was helpful, but she continued to lose her train of thought and had a hard time focusing. (*Id.* at 554-55).

When asked how often she was having migraines prior to 2015, Claimant stated she had them "all the time," that she would wake up with a headache, and they would sometimes last for 24 hours straight. (Tr. 558). She further stated that before 2019 she struggled to reach down and put her socks on, she would skip showers because "they were such a hassle," and she would stay at home unless she had a doctor's appointment. (Tr. 559).

ALJ McDaniel issued another unfavorable decision on July 17, 2024 (Tr. 517-26), finding as follows. First, Claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 2, 2015, through her date last insured of June 30, 2019. (Tr. 519). Second, Claimant had the following severe impairments: trochanteric tendinitis/bursitis; cervical degenerative disc disease with radiculopathy; generalized arthritis; right shoulder surgery; migraines; bipolar disorder; depression; attention deficit hyperactivity disorder; and obsessive-

compulsive disorder. (Tr. 519-20). Third, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 520-21). At the fourth step, ALJ McDaniel determined that through the date last insured, Claimant had the residual functional capacity (RFC) to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> She could not climb ladders, ropes, or scaffolds and she could only occasionally climb ramps or stairs. She could occasionally stoop, kneel, crouch, or crawl. She could not perform work in direct sunlight, and she could only tolerate noise levels at a 1, 2, or 3, but not at a 4 or 5. She could not have concentrated exposure to vibrations. She could not work around unprotected heights or operate dangerous machinery. She could understand, remember, and carry out simple instructions. She could interact occasionally with supervisors and coworkers, but she could not interact with the public for task completion. She could not perform fast paced assembly line work or strict production quota work.

(Tr. 521-25). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ McDaniel determined there were jobs that existed in the national economy that Claimant could have performed through her date last insured.[3] (Tr. 525-26).

ALJ McDaniel concluded Claimant was not under a disability, as defined in the Social Security Act, from July 2, 2015, her alleged onset date, through June 30, 2019, her date last insured. (Tr. 526). Claimant once again appealed ALJ McDaniel's decision. (Tr. 202-03). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

---

[3] ALJ McDaniel also determined that because Claimant was born on March 17, 1966 and was 49 years old, she changed age category to "closely approaching advanced age (prior to the date last insured)." (Tr. 525).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III.  Analysis

Claimant presents three claims of error. First, she argues ALJ McDaniel applied the wrong legal standard in evaluating whether her migraine headaches medically equaled Listing 11.02B and by failing to account for all work preclusive limitations resulting from her migraines in the RFC. Second, Claimant asserts ALJ McDaniel failed to support her RFC with substantial evidence because she failed to account for Claimant's moderate limitations in the domain of adapting and managing herself. Lastly, Claimant submits ALJ McDaniel improperly rejected the consultative opinion of Lorilea Conyer, MA, LLP, by relying on her own lay opinion.

### A. ALJ McDaniel's Evaluation of Claimant's Migraine Headaches

At Step Three of the sequential evaluation process, the ALJ must evaluate whether the claimant has "an impairment(s) that meets or equals one of [the] listings in appendix 1" and "meets the duration requirement[.]" 20 C.F.R. § 4040.1520(a)(4)(iii). Claimant carries the burden of proving her impairment meets "all of the specified medical criteria" for a listing or medically equals "all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In her Step-Three analysis, ALJ McDaniel recognized that headaches are not a listed impairment from Appendix 1 but explained that headaches are most analogous to Listing 11.02 (epilepsy), specifically paragraphs B and D. (Tr. 520 (citing SSR 19-4p)). In evaluating Claimant's headaches under Listing 11.02B and D, ALJ McDaniel found there was "no evidence for marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself." (*Id.*).

7

Claimant argues ALJ McDaniel committed reversible error by applying the wrong legal standard for evaluating whether Claimant's migraines medically equal Listing 11.02B. (DN 13, at PageID # 1574). According to Claimant, ALJ McDaniel erred by evaluating 11.02B and 11.02D together because 11.02B does not require the Claimant to establish marked limitations. (*Id.* at PageID # 1574-75). Because ALJ McDaniel only discussed the marked-limitation standard, Claimant argues he failed to address Listing 11.02B and, consequently, violated SSR 19-4p. (*Id.*). Claimant asserts the ALJ's error is not harmless because sufficient evidence in the record establishes medical equivalence of all criteria in Listing 11.02B. (*Id.*).

The Commissioner argues that Claimant has not met her burden of demonstrating that her headache disorder medically equals Listing 11.02B and maintains that ALJ McDaniel appropriately evaluated Claimant's migraines under SSR 19-4p. (DN 15, at PageID # 1597-98). Though recognizing that ALJ McDaniel's Step-Three analysis of Claimant's headaches was brief, the Commissioner explains that the remainder of ALJ McDaniel's decision provides additional support, including discussion of Plaintiff's testimony and reports to her medical providers regarding her migraines and her lack of treatment for the migraines. (*Id.* at PageID # 1600-01). The Commissioner also emphasizes that pursuant to SSR 17-2p, a qualifying medical assessment or administrative finding is necessary to establish medical equivalence, and none is included in Claimant's record. (*Id.* at PageID # 1601).

SSR 19-4p provides guidance on how headache disorders should be evaluated at Step Three. SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Under this Ruling, an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.* at *7. The Ruling identifies that the "most closely analogous listed impairment" for a medically determinable impairment of primary headache disorder is Listing

11.02 – Epilepsy. *Id.* Listing 11.02B, at issue here, requires proof of "dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)[.]" 20 C.F.R. Pt. 404, Subpt P, App'x 1, § 11.02B. Dyscognitive seizures are defined as "alteration of consciousness without convulsions or loss of muscle control" that may include "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances)[.]" *Id.* at § 11.00H(1)(b).

SSR 19-4p explains that in evaluating whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Although ALJ McDaniel mentioned Listing 11.02B in her Step-Three analysis, Claimant is correct that ALJ McDaniel's analysis of Listing 11.02B did not identify the appropriate criteria to be considered. (Tr. 520). She determined only that Claimant had no marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. (*Id.*). But Listing 11.02B does not require proof of marked limitations. Even so, any error arising from ALJ McDaniel's analysis of Listing 11.02B is harmless because Claimant cannot establish that she medically equals each criterion from Listing 11.02B.

9

To medically equal the "dyscognitive seizure" requirement, Claimant cites to treatment records categorizing her migraines as severe in September of 2018 and stating that she was incapacitated for several days despite compliance with her medication. (DN 13, at PageID # 1576-77 (citing Tr. 418-19)). Additionally, Claimant identifies the portion of the consultative examiner's opinion indicating her migraines were present when she woke up in the morning and were occipital in origin. (*Id.* (citing Tr. 316)). Claimant also relies heavily on the testimony she provided at her administrative hearing that she experienced headaches daily (*id.* (citing Tr. 73)), that her headache pain was so severe she was "dysfunctional completely" (*id.* (citing Tr. 74)), that she needed emergency treatment several times (*id.* (citing Tr. 73-74)), that she was placed on a morphine drip during these emergency room visits (*id.* (citing Tr. 73-75)), and that during headaches she could only lay still with her eyes closed and could not endure noise or light (*id.* at Tr. 73).

None of this evidence establishes medical equivalence for the requisite "dyscognitive seizures" and "alteration of consciousness." First, the Court cannot consider the emergency-room visits Claimant references and the treatment received at such visits because they occurred before the relevant disability period. Next, the only potential treating physician record providing a description of Claimant's typical headache event is the September 2018 record. In that record, Psychiatrist Brian Shaw recounted how "Claimant discussed her struggles with severe migraines that affect her monthly. The migraines are so severe that she can be incapacitated for several days." (Tr. 418). This statement is neither "detailed," nor includes "all associated phenomena" of a typical headache event. And while the consultative examiner on March 22, 2016 recounted Claimant's description of headaches as present when she wakes up and "occipital in origin," the examiner did not treat the Claimant or provide any additional detail regarding the associated phenomena. (Tr. 315-16).

10

That leaves Claimant's testimony regarding her daily headaches during the disability period in question, where she alleged severe pain that left her completely dysfunctional on a daily basis. Of note, the testimony Claimant references was offered during her first administrative hearing in March 2022. Cases within this Circuit have evaluated what kind of evidence establishes the "alteration of consciousness" requirement.  For instance, in *Mills v. O'Malley*, the Eastern District of Kentucky evaluated evidence claimant cited to, including reports stating claimant's headaches were "sharp, throbbing, stabbing, deep steady ache or pressure-like with associated symptoms that include sound, light, and odor sensitivity, blind spots, light flashes, tingling in the arm, excess tearing in eyes, stuffy and runny nose" a report that headaches felt "like still rods in his temple," and repeated reports indicating he had balance issues as well as chronic headaches. No. 6:23-CV-156-HAI, 2024 WL 150292, at *5-6 (E.D. Ky. Jan. 12, 2024). The claimant's cited evidence, the court determined, would reasonably support that claimant's headaches caused an alteration of consciousness in Listing 11.02B. *Id.*

Similarly, this District determined in *Cynthia W. v. Commissioner of Social Security* that records showing the claimant experiences migraines with aura that often involve or are proceeded by vertigo, nausea, vision issues, tinnitus, and photophobia, combined with her pain, raised a sufficient question about alteration of consciousness that ALJ's decision did not address. No. 2:23-CV-00559-CHL, 2025 WL 791637, at *7 (W.D. Ky. Mar. 12, 2025). In another case in this District, the Court determined a substantial question was raised as to medical equivalence of Listing 11.02B where the claimant pointed to evidence that she felt "pressure in the back of head or around head or eyes" that were "worse with bright lights and sounds," that headaches were "sharp or pressure-like in nature, and occur around her temples, at the base of her head, or 'all over,'" and felt like her head was "being squeezed or smashed on a door." *Chelsea H. v. O'Malley*,

No. 3:23-CV-00241-RSE, 2024 WL 3953991, at *5 (W.D. Ky. Aug. 27, 2024). The claimant in *Chelsea H.* also relied on treatment notes demonstrating depth perception issues, balance difficulties, and weekly dizzy spells with headaches at the same time. *Id.*; *see also Willis v. Comm'r of Soc. Sec.*, No. 2:19-cv-11689, 2020 WL 1934932, at *6 (E.D. Mich. Apr. 22, 2020) (finding substantial question as to medical equivalency of "alteration of consciousness" existed where records noted "cataplexy and occasional hypnagogic and hypnopompic hallucination" and "severe migraines with fainting spells and feeling unbalanced" and "extreme dizziness.").

The evidence Claimant relies on is distinguishable from the evidence in the cases above that raised a substantial question as to medical equivalence of dyscognitive seizures. Again, Claimant only relies on her "severe pain,"[4] her subjective reports that her headaches occurred daily, that she was completely dysfunctional during episodes, and that she could not endure light and noise. The Court does not find this evidence raises a substantial question as to whether Claimant's headaches cause an "alteration of consciousness" or meets the duration and adherence to treatment requirements.

Yet even if the evidence Claimant relies on raised a substantial question about the medical equivalence of Listing 11.02B, ALJ McDaniel discussed and discounted the evidence Claimant relies on later in her RFC determination. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding that ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three") (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")).

---

[4] Claimant, without offering any support, alleges that extreme pain can create an "alteration of consciousness" as required by Listing 11.02B. (DN 13, at PageID 1576).

In the RFC analysis, ALJ McDaniel noted Claimant's testimony that she has migraines. (Tr. 522). ALJ McDaniel determined, however, that Claimant's subjective statements were not entirely consistent with the medical evidence. Later, ALJ McDaniel reviewed the medical evidence, noting Claimant's diagnostic history of headaches and treatment. (Tr. 522-23). ALJ McDaniel referenced Claimant's report that migraines incapacitate her for several days (Tr. 522 (citing Ex. 4F p. 97) but noted that her treatment for the impairment has been "even more limited and routine[.]" (Tr. 522). She further stated that Claimant "did not appear to treat with a specialist during this time and migraines are only mentioned as problems intermittently and occurring monthly." (*Id.* (citing Ex 4F, pp. 18, 97, 157)). Despite her limited treatment for migraines, ALJ McDaniel restricted claimant from certain noise levels and exposure to jobs in direct sunlight to account for the impairment. (Tr. 523). Accordingly, ALJ McDaniel appropriately considered and discounted the evidence Claimant relies on to prove medical equivalency of Listing 11.02B in her RFC assessment.

For these reasons, the Court finds no reversible error in ALJ McDaniel's evaluation of Listing 11.02B at Step Three. Her analysis elsewhere in her decision demonstrates that substantial evidence supports her conclusion that Claimant's headaches do not medically equal a listed impairment. And Claimant has not demonstrated that additional limitations, beyond the noise and light limitations added by McDaniel, were required in her RFC.

B. ALJ McDaniel's Evaluation of Claimant's Limitations in Adapting and Managing Herself

At Step Three, in analyzing whether Claimant's mental impairments met or equaled a listed impairment, ALJ McDaniel considered the four broad functional areas known as the "paragraph B" criteria and found Claimant had "moderate limitation" in each area. (Tr. 520). One of these functional areas is "adapting and managing oneself." This area of mental functioning refers to a

claimant's abilities to "regulate emotions, control behavior and maintain well-being in a work setting."[5] 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00(E)(4). Later in the RFC assessment, ALJ McDaniel discussed the Paragraph B criteria again and added limitations to the RFC based on her additional evaluation of these areas. (Tr. 524).

Claimant asserts ALJ McDaniel should have implemented her Step-Three finding that Claimant was moderately limited in her ability to adapt and manage herself into the RFC determination. (DN 13, at PageID # 1580-84). ALJ McDaniel's failure to explain why limitations in this functional domain were not included in the RFC, Claimant argues, makes it impossible to trace ALJ McDaniel's path of reasoning. (*Id.* at PageID # 1583). Claimant explains ALJ McDaniel's error cannot be considered harmless because the omitted limitations would have been work-preclusive, including her ability to make work-related decisions, deal with stress, regulate her emotions, and control her behavior. (*Id.* at PageID # 1582-83).

The Commissioner responds that Paragraph B findings need not be included as functional limitations in the RFC determination. (DN 15, at PageID # 1603-04). Even so, the Commissioner explains that ALJ McDaniel accommodated the moderate limitation for Claimant's adapting and managing herself by including a restriction as to understanding, remembering, and carrying out only simple instructions and a restriction as to no fast-paced assembly line work or strict production quota work in the RFC. (*Id.* at PageID # 1604). The Commissioner asserts that ALJ McDaniel appropriately evaluated Claimant's treatment records to explain how limitations to simple work would fairly account for moderate limitations in adapting and managing oneself. (*Id.*).

---

[5] The Listing provides examples which may be considered in evaluating this functional area, including: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.* at (E)(4).

Nothing in the regulations requires an ALJ to adopt their Step Three limitations in the subsequent RFC assessment. That is because Step Three and the RFC serve different functions. Step Three regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination distinct from Step Three. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."). The RFC "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4.

Therefore, an ALJ's finding that a claimant has "moderate" or even "marked" limitations in the Paragraph B criteria at Step Three, does not necessarily mean that the claimant's RFC will have corresponding or identical limitations. *See, e.g., Thorpe v. Comm'r of Soc. Sec.*, No. 4:23-CV-2-CEA-DCP, 2023 WL 8705497, at *9 (E.D. Tenn. Nov. 20, 2023) ("[T]he ALJ is not required to provide specific RFC accommodations for limitations in the paragraph B criteria."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011) ("The RFC assessment takes into account

all of the relevant evidence in the case record, ... and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing SSR 96-8p, 1996 WL 374184); *see also Fellows v. Comm'r of Soc. Sec.*, No. 1:14-CV-506, 2015 WL 4134699, at *6 (W.D. Mich. July 8, 2015) (agreeing with the court in *Pinkard*).

ALJ McDaniel, accordingly, was not required to automatically incorporate her Step Three Paragraph B limitation as to Claimant's ability to adapt and manage herself into the Claimant's RFC. Nor did ALJ McDaniel err by not explaining her omission of the moderate limitation as to "adapting and managing oneself" in the RFC as Claimant alleges. On the contrary, ALJ McDaniel explicitly discussed the Paragraph B criteria in her RFC analysis and repeated that Claimant had moderate limitation in her ability to adapt and manage herself. (Tr. 524). She followed this statement by noting that Claimant "has evidenced mood fluctuation during the time in question, but she has generally interacted well even with depressed or flat moods[,]" that she has never required inpatient hospitalization, even when away from treatment for several months, and that she has reported good response to medication. (*Id.*). This analysis helps explain why no additional restrictions were necessary to account for Claimant's moderate paragraph B limitations in the RFC.

And if that wasn't enough, ALJ McDaniel thoroughly discussed the longitudinal record evidence of Claimant's mental impairments. (*See* Tr. 523). In doing so, ALJ McDaniel discussed evidence demonstrating the severity of Claimant's mental impairments and other evidence demonstrating relative stability during the period in question. (*Id.*). For instance, ALJ McDaniel discussed therapy notes finding hyperverbal conversation, fidgeting, and interrupted concentration with the need for frequent redirection at times (*id.* at Ex. 4F), in addition to treatment for ADHD and OCD, with mood symptoms interrupting her focus and resulting in increased irritability when

16

dealing with others. (*Id.*). Based on these records, ALJ McDaniel added limitations to Claimant's RFC that she could understand, remember, and carry out only simple instructions, that she could only interact with supervisors and coworkers occasionally with no interaction with the public for task completion, and no fast-paced assembly line work or strict production quota work. (*Id.*). Yet ALJ McDaniel found additional limitations were not warranted based on mental status exams describing Claimant as normal, demonstrating appropriate mood and affect, linear thought processes, grossly intact memory, and adequate concentration levels. (*Id.*). She recognized that Clamant was symptomatic during this time but clarified that evidence of impaired findings were rare. (*Id.*).

Attempting to support the need for additional limitation related to her ability to adapt and manage herself, Claimant cites to medical records from August 2015 describing her insight and judgment as "fair" and her mood as anxious and restless, as well as records from February 2016 describing her insight and judgment as "fair" and her concentration and attention as "impaired." (DN 13, at PageID # 1581 (citing Tr. 488, 512)). Claimant also references medical records from visits with Psychiatrist Kevin Rowe in July, September, and November of 2021, describing Claimant's insight and judgment as "suboptimal," that she needed frequent redirection and was agitated on redirection, that her mood was audibly anxious, that her distractibility prevented him from addressing her OCD symptoms, and that she was at moderate risk of causing harm to herself and low-moderate risk of causing harm to others. (*Id.* (citing (Tr. 325, 332, 343-44)).

The records from 2021 are not relevant because Claimant must demonstrate disability *before* 2019 to be entitled to benefits. And the information from the August 2015 and February 2016 records, that Claimant had only "fair" judgment and sometimes had impaired attention or concentration was considered by ALJ McDaniel. Accordingly, the Court finds ALJ McDaniel's

17

evaluation of Claimant's mental impairments, including her consideration of Claimant's ability to adapt and manage herself, is supported by substantial evidence in the record and no error results.

### C. ALJ McDaniel's Evaluation of Consultative Examiner Lorilea Conyer's Opinion

In determining a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The articulation requirement from the regulations for weighing medical opinions serves several purposes, one of which is "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]" *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021).

Claimant argues ALJ McDaniel erred by failing to properly evaluate Consultative Examiner Lorilea Conyer, MA, LPP's ("Ms. Conyer's") medical opinion. Ms. Conyer performed her consultative examination of Claimant on March 21, 2026. (Tr. 309-12). On exam, Ms. Conyer found Claimant's judgment "appeared poor," her decision-making skills appeared "impaired," she had deficits in cognitive, self-care, decision-making, and physical abilities, and her adaptive functioning appeared poor. (Tr. 311). Based on the examination findings and Claimant's allegations, Ms. Conyer determined Claimant's had marked limitation in her "capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks" and "ability to tolerate stress and pressure of day-to-day employment[.]" (Tr. 312). Ms. Conyer further determined Claimant had moderate limitation in her "ability to sustain attention and concentration towards performance of simple repetitive tasks" and "capacity to respond appropriately to supervisors and coworkers in a work setting." (*Id.*).

ALJ McDaniel discussed Ms. Conyer's opinion at several points during her RFC analysis. First, ALJ McDaniel noted how certain of Ms. Conyer's findings were not consistent with Claimant's record. For example, ALJ McDaniel pointed out that Ms. Conyer recorded deficits in memory and concentration but that such deficits "were not persistent in the treating record." (Tr. 524 (citing Ex. 2F)). And although Ms. Conyer opined Claimant had poor adaptive functioning skills, ALJ McDaniel pointed to evidence during that time that Claimant could live alone, stay

active, and care for her grandchildren. (*Id.* (citing Ex. 3E, 2F, 4F)). ALJ McDaniel also highlighted Ms. Conyer's findings that Claimant "interacted appropriately, with normal eye contact, cooperative attitude, and responsive facial expressions, despite her flat affect" and "normal concentration and attention despite problems with performing serial subtraction by three." (*Id.* (citing Ex. 2F)).

Later, ALJ McDaniel stated she was "not persuaded" by Ms. Conyer's suggestions that Claimant was markedly limited in her ability to understand, remember, and carry out instructions or in her ability to tolerate daily stress and pressures. (Tr. 525). ALJ McDaniel indicated that while Ms. Conyer's limitations may be partially supported by her own findings of impaired memory and poor adaptive functioning, they are not consistent with the longitudinal record. (*Id.*). Further explaining the weight given to Ms. Conyer's findings of "marked limitation," ALJ McDaniel stated:

> They are partially supported only because the claimant did not exhibit the kind of signs on testing by the examiner to fully support marked limitations in her ability to understand, remember, and carry out instructions. She was noted to have "deficits" in remote and recent memory, but they were not quantified, and she appeared to have estimated low average intelligence. They are not consistent with other evidence because treating providers estimated her to be of average intelligence and while her moods were up and down at times, they were most often euthymic and managed on medications. Compare that to the examiner's rating of the claimant's mood as being a 9 on a 10-point scale, where 10 is the most symptomatic. This was not the claimant's usual presentation.

(*Id.*). Whereas, ALJ McDaniel determined Ms. Conyer's suggestions that Claimant was "moderately" limited in her ability to sustain attention and concentration and ability to respond to supervisors and coworkers were both supported by Ms. Conyer's findings on exam and consistent with the longitudinal evidence of record. (*Id.*).

Claimant says the only reason offered by the ALJ for rejecting Ms. Conyer's marked limitations was that Claimant did not exhibit the "kind of signs on testing" to fully support such

limitations in her ability to understand, remember, and carry out instructions. (DN 13, at PageID # 1587). ALJ McDaniel's failure to offer any further explanation for this statement, Claimant alleges, constitutes the ALJ using her own lay opinion to interpret Ms. Conyer's test results, which should be considered "raw medical data." (*Id.*).

Claimant also argues ALJ McDaniel's consistency evaluation is confusing and does not establish an inconsistency. (DN 13, at PageID # 1588). According to Claimant, the "deficits in memory" were explicitly quantified by Ms. Conyer during her examination, therefore such deficits cannot be considered "not quantified," as ALJ McDaniel stated. (*Id.*). Claimant also challenges ALJ McDaniel's conclusion that Ms. Conyer's observation of her low average intelligence was inconsistent with other providers estimating Claimant to be of average intelligence. (*Id.* at PageID # 1588-89). Citing to several records demonstrating her "fair" insight and judgment, anxious and restless mood, and impaired concentration and attention, Claimant posits that her intelligence could have been impacted by fluctuations in her mood, which ALJ McDaniel recognized.[6] (*Id.*).

The Commissioner does not directly address Claimant's arguments regarding whether ALJ McDaniel offered improper lay opinions and relied on false inconsistencies. Instead, the Commissioner maintains ALJ McDaniel properly considered the persuasiveness of Ms. Conyer's opinion by evaluating its supportability and consistency, the two critical factors under 20 C.F.R. § 404.1520c(b)(2). (DN 15, at PageID # 1608).

To start, the Court agrees with the Commissioner that ALJ McDaniel's evaluation of Ms. Conyer's opinion complies with the regulations. ALJ McDaniel considered both the consistency and supportability factors in determining that Ms. Conyer's opined marked limitations were not persuasive. In doing so, ALJ McDaniel cited to findings Ms. Conyer made during her examination

---

[6] Claimant again attempts to rely on medical records from July 2021 that are not relevant to the instant period of disability. (*See* DN 13, at PageID # 1589 (citing Tr. 343-44).

and to other objective and subjective evidence from Claimant's record. It matters not that ALJ McDaniel conceded that Ms. Conyer's opined marked limitations were partially supported by her own examination findings. The regulations require an ALJ to consider *both* supportability and consistency in evaluating medical opinions, meaning that even where an opinion is partially supported or partially consistent, an ALJ may still properly deem the opinion unpersuasive.

Nor does the Court find ALJ McDaniel's discussion of Claimant's testing with Ms. Conyer to constitute a lay opinion or an assessment of raw medical data as Claimant alleges. ALJ McDaniel stated that Ms. Conyer's marked restrictions were "partially supported only because the claimant did not exhibit the kind of signs on testing by [Ms. Conyer] to fully support marked limitations in her ability to understand, remember, and carry out instructions." (Tr. 525). Rather than offering an improper lay opinion, ALJ McDaniel was evaluating the supportability of Ms. Conyer's opinion by comparing the signs Claimant exhibited during Ms. Conyer's testing against Ms. Conyer's ultimate conclusions as to Claimant's limitations.

As for Claimant's argument that ALJ McDaniel's consistency evaluation does not establish any inconsistencies, the Court again finds no error. At issue is ALJ McDaniel's statement that Claimant "was noted to have 'deficits' in remote and recent memory, but they were not quantified, and she appeared to have estimated low average intelligence." (Tr. 525) ALJ McDaniel then found "[t]hey [were] not consistent with other evidence because treating providers estimated her to be of average intelligence and while her moods were up and down at times, they were most often euthymic and managed on medications." (*Id.*). While the Court agrees that ALJ McDaniel's statements are a bit confusing, review of Ms. Conyer's findings, as well as ALJ McDaniel's analysis elsewhere in the opinion clarify and support her statement.

Ms. Conyer discussed how Claimant was able to spell the word "world" backwards, how she could repeat up to a 5-digit series of numbers forward and up to a 3-digit series of numbers backward, but she was unable to count backward by 3s. (Tr. 311). Ms. Conyer then stated "[d]eficits in her recent and remote memory were noted and she reported significant problems in her day-to-day life." (*Id.*). Though Ms. Conyer noted memory deficits, her testing does not necessarily quantify any such deficit. In reviewing Ms. Conyer's findings, ALJ McDaniel stated that deficits in memory and concentration occurred "but were not persistent in the treating record." (Tr. 524). Some inconsistency, therefore, exists between Ms. Conyer's findings of memory deficit, even if they are considered quantified by her testing, and the other record evidence demonstrating no persistent deficits.

Similarly, ALJ McDaniel properly considered the inconsistency between Ms. Conyer's finding of Claimant's "low average intelligence" and other findings in the record of "average intelligence." ALJ McDaniel considered the effect of Claimant's mood fluctuations throughout the RFC and specifically in evaluating Ms. Conyer's opinion. (*See* Tr. 525 "stating that "[s]he has evidenced mood fluctuations during the time in question, but she has generally interacted well even with depressed or flat moods."); Tr. 525 (finding moderate limitation in ability to respond to supervisors and coworkers "is also consistent with longitudinal evidence that includes some fluctuating of moods but an overall ability to interact with clinicians.")).

For these reasons, the Court finds no error in ALJ McDaniel's thorough analysis of Ms. Conyer's medical opinion. ALJ McDaniel's deeming of Ms. Conyer's marked restrictions to be non-persuasive is supported by substantial evidence in the record.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:          Counsel of Record